# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY DONNELL KING, SR., <br><br> Plaintiff, <br><br> v. <br><br> M.D. BITER, et al., <br><br> Defendants. | Case No.: 1:15-cv-00414-LJO-SAB (PC) <br><br> FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES <br><br> [ECF No. 68] |

Plaintiff Larry Donnell King, Sr. is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment for failure to exhaust the administrative remedies, filed February 5, 2018.

**I.**

**RELEVANT HISTORY**

This action is proceeding on Plaintiff's failure to protect claims against Defendants Tarnoff, Acebedo, Castro and Lawless (relating to an attack on October 18, 2011) and against Defendant Biter (relating to an attack in January 2014).

Defendants filed an answer to the complaint on March 7, 2017. On March 8, 2017, the Court issued the discovery and scheduling order.

///

As previously stated, on February 5, 2018, Defendants filed a motion for summary judgment for Plaintiff's alleged failure to exhaust the administrative remedies. Plaintiff filed an opposition on February 16, 2018, and Defendants filed a reply on February 22, 2018. (ECF Nos. 71, 72.)

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

///
///

"An inmate is required to exhaust only available remedies." Albino, 747 F.3d at 1171 (citing Booth v. Churner, 532 U.S. 731, 736 (2001)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" Albino, 747 F.3d at 1171 (quoting Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005)). In Ross v. Blake, the Court set forth the following three examples of when the administrative remedies are not available: (1) the "administrative procedure … operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme … [is] so opaque that it becomes, practically speaking, incapable of use … to that no ordinary prisoner can make sense of what it demands; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S.Ct. at 1859-60 (citations omitted). In addition, when an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-1226 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

**B.   Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609

F.3d 1011, 1017 (9th Cir. 2010).

Defendant bears the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner who is in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d at 818. CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

### B. Summary Underlying Plaintiff's Allegations

Plaintiff alleges that he is no longer affiliated with the Bloods, a "disruptive group," as he no longer promotes, engages in, or associates with Bloods activity. However, Plaintiff remains classified as affiliated with the Bloods based on information within his central file.

On March 21, 2011, Plaintiff submitted an inmate appeal requesting that all documents concerning his affiliation with the Bloods be taken out of his central file. Plaintiff also requested to not be housed with any Blood gang members. On March 24, 2011, Defendant D. Tarnoff rejected Plaintiff's inmate appeal at the first level and directed Plaintiff "to utilize the CDCR 22 process."

On March 26, 2011, Plaintiff responded to Tarnoff that the CDCR 22 process was useless, as the form itself stated it was not necessary for classification actions.

On April 5, 2011, Defendant J. Acebedo conducted an interview and Plaintiff expressed his concern for his safety based on the threats by members of the Blood gang. Plaintiff's appeal was denied without comment by Defendant J. Acebedo.

After J. Acebedo denied the appeal, Defendant J. Castro affirmed the decision by J. Acebedo.

On April 19, 2011, Plaintiff filed a second level response raising the same safety concerns. In May 2011, Defendant Lawless denied the appeal supporting the decisions by Defendants J. Acebedo and J. Castro.

On June 5, 2011, Plaintiff submitted another appeal expressing his safety concerns and requested that prison officials take the gang affiliation out of his central file and/or at least conduct an investigation to show that he is not promoting, engaging in any acts concerning the Blood disruptive group. Defendant Tarnoff rejected the appeal on June 14, 2011, as untimely.

On August 10, 2011, Plaintiff was attacked during the evening meal because of his refusal to engage in gang activity. During a subsequent disciplinary hearing, Plaintiff told the hearing officer that he was defending himself and was attacked for refusing to promote gang activity. The hearing officer told Plaintiff to appeal it and tell his sob story to someone else.

On July 23, 2013, Plaintiff was placed in administrative segregation, and he informed the building officer he was not to be housed with any Blood gang members because they were hostile toward him due to his refusal to participate in gang activities.

On August 1, 2013, Plaintiff appeared before the classification committee, and Plaintiff informed Defendant M.D. Biter that he did not want to be housed with any disruptive Blood members because he received threats from them. Biter told Plaintiff he if he didn't take the "cellie" that they

gave him he was going to receive a rules violation for refusing a cellie. Biter informed Plaintiff that because he was documented as a Bloods gang member he had to be housed with a Blood.

Plaintiff was forced to cell with a Bloods gang member. Plaintiff's cellmate subsequently left for several months due to a court appearance, but he returned. On January 12, 2014, Plaintiff's cellmate was taken to the prison hospital for chest pain. When he returned, both inmates were handcuffed pursuant to policy. When Plaintiff's cellmate was released from his handcuffs, he immediately began repeatedly striking Plaintiff in the facial area, stated "You don't want to represent this Blood thang [sic] huh? This is what happens for being in here."

Officers deployed their pepper spray in response and Plaintiff's cellmate stopped hitting him, submitted to handcuffs, and was taken to the shower. Plaintiff was picked up from the ground and taken to a shower, where a nurse evaluated and documented his injuries. After Plaintiff was decontaminated, he was taken to prison hospital, and then transported to Delano Regional Medical Center, where he received stitches in his scalp and face.

### C. Statement of Undisputed Facts

1. Plaintiff was an inmate at Kern Valley State Prison (KVSP) from April 1, 2008 until November 21, 2016. (Pl.'s Resp. to Defs' First Set of Reqs. For Admissions of Pl.'s, RFA No. 1 (Decl. of Arthur B. Mark III in Supp. of Defs.' Mot. for Summ. J. (Mark Decl.) Ex. A); Deposition of Plaintiff at 72 (Mark Decl. Ex. C).

2. The California Department of Corrections and Rehabilitation's Inmate Appeal Process was available to Plaintiff when he was an inmate at KVSP. (Pl.'s Resp. RFA No. 2 (Mark Dec. Ex. A); see Decl. of M. Voong in support of Defs.' Mot. for Summ J. (Voong Decl.); ¶¶ 2-4; Decl. of C. Gonzales in Supp. of Defs.' Mot. of Summ J. (Gonzales Dec.) ¶ 4.)

3. Plaintiff utilized the Inmate Appeal Process when he was an inmate at KVSP. (Pl.'s Resp. RFA No. 3 (Mark Decl. Ex. A); Voong Decl. Exs. A-E; Gonzales Decl. Exs. A-E.)

4. Plaintiff identified inmate appeal log number KVSP 0 14 00456 as exhausting his available administrative remedies for his claim Defendants Castro, Acebedo, Tarnoff, and Lawless. (Pl.'s Resp. to Defs.' Castro's, Acebedo's, Tarnoff's and Lawless's First Set of Interrog., No. 1 (Mark Decl. Ex. B.)

6

5. Plaintiff identified inmate appeal KVSP log number 11-00452 and two other inmate appeals he claims he submitted in 2011 that were screened out, as related to his claims against Defendants Castro, Acebedo, Tarnoff, and Lawless in this case. (Pl.'s Dep. at 34-49, 56-58, Dep. Ex. 5 at pp. 9-15, 16-20 (Mark Decl. Ex. C.); Voong Decl. ¶ 6, Ex. D.)

6. The only issue in appeal log number 11-00452 was a request for single cell status and Defendants were not mentioned. (Voong Decl. ¶ 6, Ex. B; Gonzales Decl., ¶ 9, Ex. B; Decl. of T. Worthy in Support of Defs.' Mot. for Summ J. ¶ Ex.A.)

7. Plaintiff's screened out 2011 inmate appeals did not mention Defendants Castro, Acebedo, Tarnoff, and Lawless by name, or an alleged attack on October 18, 2011. (Pl.'s Dep. at 34-49, Dep. Ex. 5 pp. 9-15; 16-20 (Mark Decl. Ex. C.)

8. Plaintiff identified appeal log numbers KVSP-0-14-00456; KVSP-0-14-00203 and KVSP-0-14-00406 as exhausting his administrative remedies for his claim against Defendant Biter. (Pl.'s Resp. to Def. Biter's First Set of Interrog., No. 1 (Mark Decl. Ex. B); Pl.'s Dep. at 97-100, and Pl's Dep Ex. 5, pp. 21, 38, 44 (Mark Decl. Ex. C.)

9. Appeal log number KVSP-0-14-00406 concerned a request for single cell status and did not mention Warden Biter by name, or allege anything that would have put the prison on notice that Plaintiff contended Warden Biter was liable for the January 12, 2014 assault based on his conduct at Plaintiff's classification hearing on August 1, 2013. (Voong Decl. ¶ 6, Ex. C; Gonzales Decl. ¶ 9, Ex. C.)

10. Appeal log number KVSP-0-14-00203 concerned a request for single cell status and Plaintiff did not exhaust this grievance through all levels of review. (Voong Decl. ¶ 5, Ex. A; Gonzales Decl., ¶ 10-12, Ex. J.)

**D. Analysis and Findings on Defendants' Motion**

Defendants argue that the undisputed evidence demonstrates that Plaintiff did not submit any appeal which exhausted his administrative remedies as to his claims in this action. More specifically, none of Plaintiff's appeals exhausted his claim against Defendants Tarnoff, Acebedo, Lawless and Castro for failure to protect him from the October 18, 2011 attack. Further, Plaintiff submitted no

inmate appeal sufficient to exhaust his claim that Warden Biter's actions at Plaintiff's August 1, 2013 classification committee hearing caused him to be attacked by his cellmate on January 12, 2014.

Plaintiff contends that the undisputed evidence demonstrates that he submitted appeal number KVSP-0-14-00456 which exhausted the administrative remedies as to his claims in this action. (Pl.'s Opp'n at 2.)

Here, there is no dispute that the CDCR has an administrative remedy process for inmate grievances which is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days. Cal. Code Regs., tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted); Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015); Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

        1.       <u>Failure to Protect Claim Against Defendants Tarnoff, Acebedo, Lawless and Castro</u>

Plaintiff contends that Defendants Tarnoff, Acebedo, Lawless and Castro failed to protect him from an alleged attack by another inmate on October 18, 2011. (SAC, ECF No. 45 at 3-5.)

At his deposition, Plaintiff identified the following inmate appeals as relevant to this claim: Log numbers KVSP-0-14-00456 and KVSP-11-00452; an inmate appeal dated March 21, 2011 (Dep. Ex. 5, p. 9-11) (Mark Decl. Ex. C), that was rejected by KVSP; and an inmate appeal dated June 5, 2011, that was rejected by KVSP (Dep. Ex. 5 pp. 16-20, Mark Decl. Ex. C).

        **a.**       **Appeal No. KVSP-0-14-00456**

In appeal number KVSP-0-14-00456, Plaintiff alleged that on January 12, 2014, he was assaulted by his cellie while he was handcuffed behind his back in his cell. Plaintiff indicated that he previously filed grievances requesting that the gang affiliation be removed from my c-file and no longer be housed with gang members. Plaintiff also referenced that sometime between 2011 and 2012 he was attacked but was able to defend himself. However, this appeal does not suffice to exhaust his failure to protect claims against Defendants Tarnoff, Acebedo, Lawless and Castro because it does not provide notice that they failed to protect him from an attack in October 2011. Although the grievance mentions that he was attacked sometime between 2011 and 2012, a grievance submitted over two years after the October 18, 2011 incident would not place prison officials on notice as to that event. Furthermore, the appeal referenced the January 12, 2014 assault on Plaintiff by his cellmate as the

8

factual basis for the grievance. Indeed, the basis for Plaintiff's failure to protect claim against Defendants Tarnoff, Acebedo, Lawless and Castro is that they denied his prior appeals and failed to act in March and June 2011 in response to Plaintiff's complaints. (SAC, ECF No. 49 at 3-5.) Plaintiff's mere statement that "on two separate occasion[s] I submitted 602 appeals requesting that the gang affiliation be removed from my c-file and not be housed with blood gang members" is insufficient to place prison officials on notice that this grievance, submitted in 2014, grieved about Tarnoff, Castro, Lawless and Acebedo's actions in 2011 which apparently caused him to be beat up.

More specifically, Plaintiff does not identify the Defendants' names or positions, no prior grievances are identified by date or log number, and Plaintiff fails to set forth the date in which he was attacked in 2011 or claim that any particular prison official's actions or inactions led to him being beat up on October 18, 2011. Plaintiff obviously had knowledge of such information as set forth in his complaint filed in 2014. (ECF No. 1.) Furthermore, in the relief section of the grievance, Plaintiff requested the removal of documents from his central file and not to be housed with gang members, and not an investigation as to why he was assaulted. (Opp'n at 18.) In the first level response, it was noted that as of March 5, 2014, there was no indication that Plaintiff was the victim of an assault. (Opp'n at 21-11.) Plaintiff now contends that the prison misunderstood his complaint; however, Plaintiff could have but did not clarify his complaint in his requests for further review in 2014. (Opp'n at 19, 33.) At the second level of review Plaintiff claimed that the documents in his central file associating him with Bloods subjected him "to further violent situations." (Id. at 19.) At the third level of review, Plaintiff continued to complaint about the documentation in his central file and housing, and not the specific conduct of the Defendants for which he alleges in the instant action. (Opp'n at 19.) Indeed, Plaintiff's argument now attempting to explain that his true allegations in grievance number KVSP-0-14-00456 involved the actions by Tarnoff, Acebedo, Lawless and Castro in 2011, supports the inference that the grievance was not sufficient to alert the prison to the failure to protect claims upon which he presents in the instant action. For all of these reasons, grievance number KVSP-0-14-00456 failed to exhaust Plaintiff's failure to protect claim against Defendants Tarnoff, Acebedo, Lawless and Castro.

///

### b. Appeal No. KVSP-11-00452

Plaintiff submitted this grievance on March 8, 2011. (C Gonzales Decl. Ex. B; Voong Decl. Ex. B; T. Worthy Decl. Ex. A.) In this grievance, Plaintiff's sole request for relief was to obtain single cell status. In his opposition, Plaintiff submits that it was only appeal number KVSP- 0-14-00456, which exhausted the claims in the instant action. In any event, this appeal did not provide prison officials notice of his claim against Defendants Tarnoff, Acebedo, Lawless and Castro. Plaintiff's request to "obtain single cell status" in March 2011did not put prison officials on notice of his claim that Defendants Tarnoff, Acebedo, Lawless and Castro were somehow responsible for an attack that took place in October 2011. This appeal makes no mention of any threats against Plaintiff or that any of the Defendants had knowledge of such threats. (Voong Decl. ¶ 6, Ex. B; Gonzales Decl., ¶ 9, Ex. B; Decl. of T. Worthy in Support of Defs.' Mot. for Summ J. ¶ Ex.A.) Moreover, Defendants submit evidence that Plaintiff produced a false copy of appeal number KVSP-11-00452.

Plaintiff produced an alleged copy of this grievance in which language was added after the appeal had been decided at the third level. (T. Worthy Decl. Ex. A; Voong Decl. ¶ 6 Ex. B.) Defendants requested that Plaintiff bring the originals of his 2011 inmate appeal documents to his deposition. (Pl.'s Dep. Ex. 1; Mark Decl. Ex. C.) Plaintiff did not do so, and stated that he sent the originals to the United States Marshal's office in response to the Court's February 16, 2016 service order. (Pl.'s Dep. at 9-10, 61.) At his deposition, Plaintiff could not explain the differences between the copies from the CDCR and his copy, and speculated that KVSP submitted "false documents." (Pl.'s Dep. at 61.) After Plaintiff's deposition, defense counsel contacted the United States Marshal's office who provided the documents sent to them by Plaintiff. (T. Worthy Decl. ¶ 2.) The grievance form for appeal number KVSP-11-00452 that Plaintiff sent to the United States Marshal in February 2016 is the exact copy of the form maintained and retrieved from Plaintiff's central file and in the files of the third level reviewer. (T. Worthy Decl. Ex. A; Voong Decl. Ex. B; C. Gonzales Decl. Ex. B.) Thus, based on the evidence presented to the Court, the version of the appeal form with the added language in sections A and B is not authentic and cannot be considered on summary judgment. See Hal Roach Studios, Inc. v. Richard Feiner and Co. Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (unauthenticated documents cannot be considered on summary judgment.)

**c.     Screened Out Appeals**

In his complaint, Plaintiff references two screened out appeals which he contends excused him from exhausting his claim. (SAC, ECF No. 49, at 2, ¶ II.C.) Plaintiff is incorrect.

The first appeal, dated March 21, 2011, was rejected at the first level of review. (Pl.'s Dep. Ex. 5 at p.9; Pl.'s Dep. at pp. 36-47 (Mark Decl. Ex. C).) Plaintiff then attempted to appeal directly to the third level of review, bypassing the second level of review as required by CDCR's regulations. (Pl.'s Dep. Ex. 5 at p. 9-15; Pl.'s Dep. at 36-47.) The appeal was rejected on March 21, 2011 at the third level of review because Plaintiff improperly bypassed the second level. (Pl.'s Dep. at 46-47; Dep. Ex. 5 at 14-15.) Therefore, the March 2011 appeal was properly screened out because Plaintiff failed to follow CDCR's regulations.

The second appeal, dated June 5, 2011, challenged Plaintiff's classification as a "Blood" gang member and requested "all documentation concerning Athens Park bloods be removed from my c-file and that I'm considered a non-affiliate." (Pl.'s Dep. Ex. 5, at 16-18.) This appeal was rejected as untimely. (Id. at 16, 19.) Plaintiff did not pursue the rejection of the appeal as untimely, and therefore this appeal cannot serve to exhaust the administrative remedies. (Id. at 16-20.)

2.     Failure to Protect Claim Against Defendant Biter

Plaintiff contends that Defendant Biter violated his Eighth Amendment rights because he approved him for housing with another Blood gang member at a classification hearing on August 1, 2013. (SAC, ECF No. 49 at 5-7.) Plaintiff identified the following three inmate appeals as exhausting this claim: KVSP-0-14-00203; KVSP-0-14-00406; and KVSP-0-14-00456.

**a.     Appeal No. KVSP-0-14-00203**

Plaintiff failed to exhaust this appeal through all the necessary levels of review. Plaintiff submitted this appeal on January 24, 2014, and it was screened out at the first level of review because it involved multiple issues that did not derive from a single event. Plaintiff was advised that he could resubmit the unrelated issues separately using separate appeals. However, Plaintiff did not resubmit the appeal. (Gonzales Decl. ¶¶ 12-13.)

///

///

In any event, even if Plaintiff's contends this appeal was inappropriately screened out, it does not suffice to exhaust the administrative remedies as to his claim against Warden Biter. (Pl.'s Dep. Ex. 5 at pp. 38-43 (Mark. Decl. Ex. C).) Although the appeal references the attack on January 12, 2014, it does not mention Warden Biter, or discuss in any fashion that Warden Biter's alleged actions on August 1, 2013, resulted in Plaintiff being assaulted by his cellmate in January 2014. Accordingly, this grievance did not suffice to put the prison on notice that Plaintiff was alleging misconduct by Warden Biter.

      **b.**      **Appeal No. KVSP-0-14-00406**

Plaintiff submitted this appeal on January 28, 2014, in which he indicated that he was assaulted by his cellmate on January 12, 2014. (Voong Decl., Ex. C.) Plaintiff alleged he was paranoid about having cellmates, that he cannot sleep, and that he feels he will attack any cellmate. (Id.) Plaintiff also indicates that he went to an ICC committee on **January 23, 2014**, and the January 12, 2014 assault was "acknowledged." (Id.) Plaintiff requested "single cell status" as relief. (Id.) This appeal does not mention Warden Biter, the August 1, 2013 classification committee, or that Warden Biter's alleged decision regarding Plaintiff's cellmate in August 2013, was responsible for the January 12, 2014 attack on Plaintiff. Plaintiff's claim that he was attacked about a year prior which "ended up being a mutual combat" and then was assaulted by his cellmate, also does not place the prison on notice that Plaintiff's claimed it was Warden Biter's decision at a classification committee hearing on August 1, 2013, which lead to his assault in January 2014. (Id.) Indeed, the only reference in this appeal to a classification committee decision involved the January 23, 2014, decision-after the assault on January 12, 2014 took place. Accordingly, this grievance did not suffice to exhaust Plaintiff's claim against Defendant Warden Biter.

      **c.**      **Appeal No. KVSP-0-14-00456**

In appeal number KVSP-0-14-00456, Plaintiff alleged that on January 12, 2014, he was assaulted by his cellie while he was handcuffed behind his back in his cell. (Voong Decl., Ex. D.) Plaintiff indicated that he previously filed grievances requesting that the gang affiliation be removed from my c-file and no longer be housed with gang members. (Id.) Plaintiff also referenced that sometime between 2011 and 2012 he was attacked but was able to defend himself. (Id.) The only

12

reference to classification is to the request to the "ICC" after the January 12, 2014 assault "to remove the gang affiliation" from his central file. (Id.) More specifically, Plaintiff does not identify the Defendant's name or position, and fails to set forth any facts relating to Warden Biter's alleged decision in August 2013 which led to him being beat up on January 12, 2014. Plaintiff obviously had knowledge of such information as set forth in his complaint filed in 2014. (ECF No. 1.) Indeed, Plaintiff's argument now attempting to explain that his true allegations in grievance number KVSP-0-14-00456 involved Defendant Warden Biter's decisions at the August 1, 2013, classification hearing that he alleges in the complaint supports the inference that the grievance was not sufficient to alert the prison to the failure to protect claims upon which he presents in the instant action.

        **d.**        **Other Exhausted Inmate Appeal No. KVSP-0-14-01328**

The only other exhausted appeal between January 12, 2014 and November 23, 2014, the date Plaintiff filed the instant action, is KVSP-0-14-01328. (Voong Decl., Ex. E.) This appeal does not concern the August 1, 2013, classification committee decision, does not mention Warden Biter, or discuss in any way that Warden Biter was somehow responsible for the January 12, 2014 attack. (Id.) Accordingly, Plaintiff has failed to exhaust his administrative remedies and Defendants' motion for summary judgment should be granted.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment for failure to exhaust the administrative remedies be granted; and

2. The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __March 1, 2018__

UNITED STATES MAGISTRATE JUDGE