UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY DONNELL KING, SR.,<br><br>  Plaintiff,<br><br>  v.<br><br>M.D. BITER, et al.,<br><br>  Defendants. | Case No.: 1:15-cv-00414-NONE-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT BITER'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 118) |

Plaintiff Larry Donnell King, Sr. is appearing *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Biter's motion for summary judgment, filed July 31, 2020.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding on Plaintiff's failure to protect claim against Defendant M. Biter relating to an attack in January 2014.

Defendant filed an answer to the complaint on March 7, 2017.

On April 2, 2019, the Court issued an amended discovery and scheduling order.

///

///

1

On May 7, 2019, the Court set this case for a settlement conference before Magistrate Judge Barbara A. McAuliffe. After the case did not settle, a further amended discovery and scheduling order was issued on July 16, 2019.

On July 31, 2020, Defendant M. Biter filed the instant motion for summary judgment. Plaintiff filed an opposition on September 16, 2020, and Defendant filed a reply on September 30, 2020.

On October 7, 2020, Plaintiff submitted a supplemental declaration and exhibit in support of his opposition, and Defendant filed an objection on October 13.2020.

## II.

### LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted). It need only draw inferences, however, where there is "evidence in the record...from which a reasonable inference...may be drawn"; the court need not

entertain inferences that are unsupported by fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). But, "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.    Summary of Plaintiff's Complaint

Plaintiff alleges that he is no longer affiliated with the Bloods, a "disruptive group," as he no longer promotes, engages in, or associates with Bloods activity. However, Plaintiff remains classified as affiliated with the Bloods based on information within his central file.

On March 21, 2011, Plaintiff submitted an inmate appeal requesting that all documents concerning his affiliation with the Bloods be taken out of his central file. Plaintiff also requested to not be housed with any Blood gang members. On March 24, 2011, Plaintiff's appeal was rejected at the first level and Plaintiff was advised "to utilize the CDCR 22 process."

On March 26, 2011, Plaintiff responded that the CDCR 22 process was useless, as the form itself stated it was not necessary for classification actions.

On April 5, 2011, an interview was conducted and Plaintiff expressed his concern for his safety based on the threats by members of the Blood gang. Plaintiff's appeal was denied without comment.

On April 19, 2011, Plaintiff filed a second level response raising the same safety concerns. In May 2011, the appeal was denied.

On June 5, 2011, Plaintiff submitted another appeal expressing his safety concerns and requested that prison officials take the gang affiliation out of his central file and/or at least conduct an investigation to show that he is not promoting, engaging in any acts concerning the Blood disruptive group. The appeal was rejected as untimely on June 14, 2011.

On August 10, 2011, Plaintiff was attacked during the evening meal because of his refusal to engage in gang activity. During a subsequent disciplinary hearing, Plaintiff told the hearing officer that he was defending himself and was attacked for refusing to promote gang activity. The hearing officer told Plaintiff to appeal it and tell his sob story to someone else.

On July 23, 2013, Plaintiff was placed in administrative segregation, and he informed the building officer he was not to be housed with any Blood gang members because they were hostile toward him due to his refusal to participate in gang activities.

On August 1, 2013, Plaintiff appeared before the classification committee, and Plaintiff informed Defendant M.D. Biter that he did not want to be housed with any disruptive Blood members because he received threats from them. Biter told Plaintiff he if he didn't take the "cellie" that they gave him he was going to receive a rules violation for refusing a cellie. Biter informed Plaintiff that because he was documented as a Bloods gang member he had to be housed with a Blood.

Plaintiff was forced to cell with a Bloods gang member. Plaintiff's cellmate subsequently left for several months due to a court appearance, but he returned. On January 12, 2014, Plaintiff's cellmate was taken to the prison hospital for chest pain. When he returned, both inmates were handcuffed pursuant to policy. When Plaintiff's cellmate was released from his handcuffs, he immediately began repeatedly striking Plaintiff in the facial area, stated "You don't want to represent this Blood thang [sic] huh? This is what happens for being in here."

Officers deployed their pepper spray in response and Plaintiff's cellmate stopped hitting him, submitted to handcuffs, and was taken to the shower. Plaintiff was picked up from the ground and taken to a shower, where a nurse evaluated and documented his injuries. After Plaintiff was decontaminated, he was taken to prison hospital, and then transported to Delano Regional Medical Center, where he received stitches in his scalp and face.

### B. Defendant's Objections to Plaintiff's Evidence

Defendant raises several objections to various evidence submitted in support of Plaintiff's opposition. (ECF No. 126-1; ECF No. 129.)

While a court will consider a party's evidentiary objections to a motion for summary judgment, "[o]bjections such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself." All Star Seed v. Nationwide Agribusiness Ins. Co., No. 12CV146 L BLM, 2014 WL 1286561, at *16-17 (S.D. Cal. Mar. 31, 2014) (citing Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006)); see also Comite de Jornaleros de Redondo Beach, 657 F.3d at 964 n.7 ("[Rule] 56(c)(2) permits a party to 'object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence' " (quoting Fed. R. Civ. Pro. 56)). Given the Court's duty to determine whether there exists a genuine dispute as to any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful. Rivers v. Sandhu, No. 115CV00276LJOBAMPC, 2018 WL 1392883, at *2 (E.D. Cal. Mar. 20, 2018). (citing see e.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09–1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09–690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S–062919 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); Burch, 433 F. Supp. 2d at 1119).

In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay or is not properly authenticated. Id. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because, at trial, plaintiff's testimony of contents would not be hearsay); Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004) (finding "declarations that do contain hearsay are admissible for summary judgment purposes because they could be presented in an admissible form at trial" (internal quotation marks omitted) ); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to

1  produce evidence in a form that would be admissible at trial, as long as the party satisfies the
2  requirements of Federal Rules of Civil Procedure 56.").
3        Defendant raises several objections to Plaintiff's evidence, which the Court has reviewed.  To
4  the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on
5  admissible evidence.  It is not the practice of the Court to rule on evidentiary matters individually in
6  the context of summary judgment, unless otherwise noted.  This is particularly true when the
7  evidentiary objections consist of general objections such as "irrelevant."  See Capital Records, LLC v.
8  BlueBeat, Inc., 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010).  In this instance, the Court need not
9  and will not rule on each of the evidentiary objections because for the reasons explained below, the
10 competing declarations of Plaintiff and Defendant creates a genuine issue of material fact which
11 cannot be resolved by way of summary judgment.

**C.   Statement of Material Undisputed Facts**

13     1.    Plaintiff was committed to the California Department of Corrections and Rehabilitation
14 in 1994 to serve a sentence of thirty-years to life for murder.  (Deposition of Larry Donnell King (Pl.'s
15 Dep.) at 17:1-7, ECF No. 118-3, Ex. B.)
16     2.    Plaintiff was an inmate at Kern Valley State Prison (KVSP) from April 1, 2008 until
17 November 21, 2016.  (Pl.'s Resp to Defs.' First Set of Reqs. For Admiss. To Pl.'s RFA No. 1, ECF
18 No. 118-3, Ex. A; Pl.'s Dep. at 72, ECF No. 118-3, Ex. B.)
19     3.    Defendant M. Biter worked for CDCR for over twenty-nine years; from August 2010 to
20 November 2015, he was the Warden of KVSP.  (Declaration of M. Biter (Biter Decl.) ¶ 1, ECF No.
21 118-4.)
22     4.    Plaintiff was released on parole on December 23, 2019.  (Declaration of Brian Hancock
23 (Hancock Decl.) ¶ 4, ECF No. 118-5.)
24     5.    Plaintiff was a member of the Bloods gang, specifically a group called Athens Park
25 Boys, before coming to prison.  (Pl.'s Dep. at 23:2-24:18, ECF No. 118-3, Ex B.)
26     6.    Plaintiff does not claim to have been attacked by an Bloods in prison from 1994-2010.
27 (Pl.'s Dep. at 31:4-32:21, ECF No. 118-3, Ex. B.)
28     7.    On October 18, 2011, Plaintiff and inmate Barnett fought and after Plaintiff signed

documents indicating he had no safety concerns with Barnett; Plaintiff stayed in general population and did not seek to leave the yard. (Pl.'s Dep. at 63:17-25; 64:18-68:15, ECF No. 118-3, Ex B; Pl.'s Resp. to RFA No. 6, ECF No. 118-3, Ex. A.)

8. Plaintiff continued to cell with a Blood (Elie) after the October 8, 2011 incident and signed a document indicating he had no safety concerns with this inmate. (Pl.'s Dep at 63:9-16; 64:18-68:15, ECF No. 118-3, Ex. B.)

9. On August 1, 2013, Plaintiff appeared before the Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC); Defendant Biter was the chairman of the committee, the members were Captains Goss and Hixon; K. Kyle, LCSW; B. Hancock, Correctional Counselor I (A); and M. Hernandez, Classification and Parole Representation (C & PR) (A). The recorder was M. Armas, a Correctional Counselor II (A). (Biter Decl. ¶¶ 9-10, Ex. A; Pl.'s Dep at 75:25-76:5, ECF 118-3, Ex. B.)

10. The ASU-ICC reviewed Plaintiff's placement in the ASU and his cell status. (Biter Decl. ¶ 5, Ex. A.)

11. If ASU-ICC determines an inmate should be retained in ASU, the decision is referred to the Classification Service Representative (CSR) for approval. (Biter Decl. ¶ 5.)

12. The Warden acts as Chairperson of the ICC; however, the ICC acts as a committee. If a committee member disagrees with the committee action, the fact would be noted by the recorder on the 128-G reflecting the ICC's action. (Biter Decl. ¶¶ 4, 6.) The chairperson makes the ultimate decision.[1] (Biter Dep. at 44:9-17, ECF No. 124-Lodged Documents.)

13. The ICC reviewed Plaintiff for double-cell status on August 1, 2013, and determined his placement in ASU was appropriate; that he could continue on double-cell status and participate in "walk-alone" yard with his cellmate. (Biter Decl. ¶¶ 10-14, Ex. A.)

14. On August 16, 2013, Plaintiff and inmate Locklin became cellmates. (Pl.'s Dep. at

---

[1] Defendant correctly points out Plaintiff failed to attach Biter's Deposition Transcript as Exhibit H as referenced in his opposition. However, Biter's Deposition Transcript was lodged with the Court for review. (ECF No. 124.)

83:21-85:3, ECF No. 118-3, Ex. B; Deposition of T. Locklin at 13:2-16:24; 18:3-19:3 and Locklin Dep. Ex 2, ECF No. 118-3, Ex. C; Declaration of B. Hancock, Ex. A, ECF No. 118-5.)

15. Locklin and Plaintiff were cellmates from August 16, 2013 through September 4, 2013, when Locklin went out to court. (Pl.'s Resp. to RFA No. 113, ECF No. 118-3, Ex. A.; Hancock Decl., Ex. A; Locklin Dep. at 18:11-20:9, ECF No. 118-3, Ex. C.)

16. Locklin and Plaintiff did not fight or have any arguments during the August 16, 2013 through September 4, 2013, period. (Locklin Dep. at 20:18-21:14, ECF No. 118-3, Ex. C; Pl.'s Dep. at 90:12-91:1, ECF No. 118-3, Ex. B.)

17. Plaintiff had no cellmate from September 4, 2013 until October 31, 2013. (Pl.'s Dep. at 86:11-17, ECF No. 118-3; Hancock Decl., Ex. A.)

18. Locklin returned to KVSP on October 31, 2013 and again became Plaintiff's cellmate. (Pl.'s Dep. at 86:11-87:21-90:11, ECF No. 118-3, Ex. B; Hancock Decl., Ex. A; Locklin Dep. at 22:7-24:9, ECF No. 118-3, Ex. C.)

19. Locklin and Plaintiff celled together without incident from October 31, 2013 through January 12, 2014, when Locklin attacked Plaintiff. (Pl.'s Dep. at 90:12-92:7, ECF No. 118-3, Ex. B; Locklin Dep. at 23:15-25:9, ECF No. 118-3, Ex. B; Hancock Decl., Ex. A; SAC, ECF No. 49 at 6:15-20.)

20. After Locklin returned on October 31, 2013, Plaintiff did not file anything with the prison alerting them to any danger from being celled with Locklin. (Pl.'s Dep. at 91:2-5, ECF No. 118-3, Ex. B.)

21. Warden Biter did not assign Locklin as Plaintiff's cellmate and did not know who his cellmate was. (Biter Decl. ¶¶ 8, 17; Pl.'s Dep. at 91:17-20, ECF No. 118-3, Ex. B.)

**D.     Analysis of Defendant's Motion**

1.     Failure to Protect

"The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates." Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.

Ct. 1970, 128 L. Ed. 2d 811 (1994); Harris v. Roberts, 719 F. Supp. 879, 880 (N.D. Cal. 1989) ("Allegations that [prison] officials were deliberately indifferent to the threat of serious harm or injury to a prisoner may provide a basis for relief." (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980))). Deliberate indifference requires a showing of both objective and subjective components. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The objective component requires a prisoner demonstrate "he was deprived of something sufficiently serious." Foster v. Runnells, 554 F.3d 807, 812 (9th Cir. 2009) (quoting Farmer, 511 U.S. at 834). The risk must be "substantial," but it is well settled "a prisoner need not wait until he is actually assaulted before obtaining relief." Helling v. McKinney, 509 U.S. 25, 33 (1993); see also Farmer, 511 U.S. at 845.

The subjective component requires prison officials acted with the culpable mental state, which is "deliberate indifference" to the inmate's health or safety. Farmer, 511 U.S. at 837-38; Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (stating deliberate indifference "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" (citation omitted)). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837-38. "A fact-finder may infer subjective awareness from circumstantial evidence." Wilk v. Neven, 956 F.3d 1143, 1147 (9th Cir. 2020) (citations omitted).

Defendant does not contend that Plaintiff has not satisfied the objective prong of the test, and it is undisputed that Plaintiff was attacked by his cellmate who was a Bloods gang member, and he suffered injuries as a result of the altercation. Defendant argues Plaintiff has no evidence from which a reasonable jury could conclude that he (Warden Biter) was aware of a serious risk of harm to Plaintiff from his cellmate. In the alternative, Defendant argues he is entitled to qualified immunity.

In opposition, Plaintiff argues that genuine issues exist as to whether Defendant Biter failed to protect Plaintiff from a substantial risk of serious harm based on the information provided by him, and Defendant is not entitled to summary judgment because any reasonable prison official in Biter's position would know that the actions he took and failed to take violated the Eighth Amendment.

In reply, Defendant argues that "Plaintiff has not presented any evidence that the Bloods posed any substantial risk to him that was documented in any way in his central file and, in fact, there is no evidence Warden Biter had any reason to believe on August 1, 2013 that the Bloods posed any substantial threat to Plaintiff." (ECF No. 126 at 6:11-14.)

Both Plaintiff and Defendant have submitted a declaration, signed under penalty of perjury, and both declarations contradict one another. Plaintiff declares, in part, that "I addressed Defendant Biter directly at the August 1, 2013, ICC proceeding and I told him that I had written several 602s in the past concerning my gang issues, that I did not want to be in the cell with a Bloods gang member inmate, that I was continuously getting threats from the Bloods, and that I was previously attacked by Bloods gang members in retaliation for my refusal to participate in Bloods gang activities, … Defendant Biter responded directly to me and stated 'You're documented as a Blood, so I'm going to house you with a Blood.' Defendant Biter then told me that if I did not accept my cellmate that I would receive a '115' (a Rules Violation Report) for refusing a cellmate. (Pl.'s Decl. ¶¶ 23-24, ECF No. 122-1.) Defendant Biter declares, in part, that "I did not say to [Plaintiff] 'you are documented a blood so I'm gonna house you with a blood' as [Plaintiff] alleges. In addition, I would not have threatened [Plaintiff] with a '115' for refusing a cellmate. These comments are not reflected on Exhibit A and such comments are not consistent with how I generally speak, or how I conducted myself as chairman of an ICC or Warden of KVSP." (Biter Decl. ¶ 16, ECF No. 118-4.)

Based on the competing declarations as to what Plaintiff told Defendant Biter and his response, there is a disputed issue of fact which is material. Consequently, the trier of fact must determine what did or did not happen between the parties on the date in question, and Defendant is not entitled to judgment as a matter of law. See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (to demonstrate the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " (citations omitted). Viewed in the light most favorable to

Plaintiff, and drawing all reasonable inferences in favor of Plaintiff, a dispute exists as to whether Defendant Biter was informed that Plaintiff was repeatedly receiving threats from Bloods gang members and could not safely house with them, but ordered him to do so.

2. Qualified Immunity

Qualified immunity applies when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. White v. Pauly, 137 S. Ct. 548, 551 (2017). Officers are entitled to qualified immunity under § 1983 unless (1) the officers violate a federal a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018); White, 137 S. Ct. at 551. "Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. See Wesby, 138 S. Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). This is a "demanding standard" that protects "all but the plainly incompetent or those who knowingly violate the law." Wesby, 138 S. Ct. at 589 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). To be "clearly established," a rule must be dictated by controlling authority or by a robust consensus of cases of persuasive authority. Wesby, 138 S. Ct. at 589; see also Perez v. City of Roseville, 882 F.3d 843, 856-57 (9th Cir. 2018) (noting that Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity); Hamby v. Hammond, 821 F.3d 1085, 1095 (9th Cir. 2016) ("[D]istrict court decisions -- unlike those from the courts of appeals -- do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity."). In examining whether a rule/right is clearly established, courts are to define the law to a "high degree of specificity," and not "at a high level of generality." Wesby, 138 S. Ct. at 590; Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). The key question is "whether the violative nature of particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). Although it is not necessary to identify a case that is "directly on point," generally the plaintiff needs to identify where an officer acting under similar circumstances was held to have violated federal right. Wesby, 138 U.S. at 577; Vos, 892 F.3d at 1035; Felarca v.

Birgeneau, 891 F.3d 809, 822 (9th Cir. 2018); Shafer v. City of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017).

Viewing the facts here in the light most favorable to Plaintiff, Plaintiff's Eighth Amendment right was clearly established. "The Supreme Court need not catalogue every way in which one inmate can harm another ... to conclude that a reasonable official would understand that his actions violated [the Eighth Amendment]." Wilk v. Neven, 956 F.3d at 1148 (quoting Castro v. County of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc)). "Once an official is subjectively aware of a substantial risk of serious harm, 'clearly established' law requires ... 'that the [official] take reasonable measures to mitigate the substantial risk.' " Wilk v. Neven, 956 F.3d at 1148-49 (citation omitted).

In 1994, Farmer clearly established that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer, 511 U.S. at 833. As the Ninth Circuit recently explained in Wilk v. Neven, 956 F.3d 1143 (9th Cir. 2020), in discussing conduct that occurred in 2013-2014:

> None of the defendants can claim ignorance to a prisoner's right to be protected from violence at the hands of other inmates. That right has been clearly established since the Supreme Court's decision in Farmer v. Brennan in 1994. We have recently and explicitly held that it is clearly established that prison officials must "take reasonable measures to mitigate the [known] substantial risk[s]" to a prisoner.

Wilk v. Neven, 956 F.3d at 1050. (citations omitted).  Further, existing case law with regard to prison gang violence is sufficient to put Defendant on notice that he has a duty to protect inmates who are at risk of such violence. See, e.g., Fierro v. Smith, 731 Fed. App'x 652, 655 (9th Cir. 2018) (relying on Farmer to conclude that "the law requiring prison officials to take reasonable measures to abate an inmate's substantial risk of serious harm from other inmates clearly was established when" the plaintiff made his protective custody requests between 2011 and 2013); Luna v. Thurien, 129 Fed. App'x 381, 383 (9th Cir. 2005) (relying on Farmer as clearly established law to affirm denial of qualified immunity for sheriff's officers who exposed the plaintiff to rival gang members resulting in the plaintiff's assault by those gang members); Robinson v. Prunty, 249 F.3d 862, 866–67 (9th Cir. 2001) (relying on Farmer as clearly established law to affirm denial of qualified immunity for prison officials

who operated racially integrated exercise yards exposing inmates of race-based gangs to assault by rival gang members, which resulted in the plaintiff's assault by a rival gang member).

Defendant argues he is entitled to qualified immunity because the "undisputed evidence shows that there was no substantial risk of harm to Plaintiff from Bloods generally or his cellmate specifically; let alone that Defendant Biter was aware of such risk." (ECF No. 118 at 10:12-14.) However, the right of an inmate to be protected from threats of violence from other inmates, and the duty of a prison official to take reasonable measures to mitigate a known substantial risk of serious harm, has been established since at least 1994. Here, construed in favor of Plaintiff, the evidence demonstrates that Defendant Biter had actual knowledge of repeated threats of violence by Bloods gang members on Plaintiff, and took no action to prevent Plaintiff from being housed with a Bloods member. If Plaintiff's version of the facts ultimately prevails, there is a reasonable possibility that Defendant would not be entitled to qualified immunity. To the extent Plaintiff's version of events lacks credibility, Defendant may challenge it at trial. At this juncture, the Court cannot weigh dueling declarations, and Defendant Biter is not entitled to qualified immunity.

3.     Claims for Declaratory and Injunctive Relief

Plaintiff seeks "declaratory and injunctive relief removing the Blood group from my c-file." (SAC, ECF No. 49 at 3.) However, Plaintiff is no longer incarcerated. (UDF 4.) In addition, Defendant Biter was not sued in his official capacity, and there is no other Defendant named who could effectuate the injunctive relief. (ECF No. 49 at 2.) Consequently, Plaintiff's claim for injunctive relief is moot. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975) (when inmate is released from custody, any claim for injunctive relief becomes moot); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007). Accordingly, Plaintiff's claims for declaratory and injunctive relief should be dismissed.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant Biter's motion for summary judgment be granted with respect to the dismissal of the claims for declaratory and injunctive relief and denied in all other respects.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 3, 2021**

UNITED STATES MAGISTRATE JUDGE