1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   LARRY DONNELL KING,                    Case No. 1:15-cv-00414-JLT-SAB (PC)

12                       Plaintiff,          ORDER RE MOTIONS IN LIMINE

13              v.

14                                           (Docs. 182–193)

15   M.D. BITER, et al.,

16                       Defendants.

## I.    BACKGROUND

Larry Donnell King, Sr., was a state prisoner and asserts M.D. Biter, a former Warden of Kern Valley State Prison, violated his civil rights under the Eighth Amendment. Plaintiff asserts that during an inmate classification committee ("ICC") hearing on August 1, 2013, he told Defendant that he did not want to be housed with Blood gang members due to threats Plaintiff received for not promoting their gang activity. Plaintiff alleges Biter ignored Plaintiff's concerns and housing requests, after which Plaintiff was attacked by a gang member. Plaintiff seeks to hold Biter liable under 42 U.S.C. § 1983. Before the Court for decision are 16 motions in limine: five filed by Defendant; eleven filed by Plaintiff. (Docs. 182-193.)

## II.    LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of

trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained that motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted).

Courts disfavor motions in limine seeking to exclude broad categories of evidence. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]." *Sperberg,* 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

Moreover, the rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue outside the presence of the jury.

### III.   ANALYSIS

**A.   Defendant's Motions in Limine**

    1.   Defendant's Motion in Limine #1

Defendant moves to preclude Plaintiff from offering any documents or testimony regarding: (1) a July 13, 2013, Rules Violation Report (RVR) (No. 11572) issued to him for possession of a controlled substance and an inmate-manufactured weapon; and (2) the criminal prosecution of the RVR, which took place several years later in Superior Court of California,

County of Kern, Case No. DF011980A, where King was found not guilty. (Doc. 182 at 2.) It appears to be undisputed that the July 13, 2013, RVR is the reason why Plaintiff was in administrative segregation at the time of the events directly at issue in this case and relatedly is why Plaintiff appeared before Defendant for the August 1, 2013 ICC hearing, at which time he warned Defendant about his safety concerns. (*See* Doc. 211 at 2.)

Defendant argues the not-guilty verdict, and any evidence of and testimony related to the criminal case, including but not limited to testimony by King and the attorneys involved in the criminal case, and any transcripts or exhibits from the criminal case, should be excluded under Federal Rules of Evidence 402 and 403 because that evidence is "irrelevant and unduly prejudicial and would confuse the issues in the case and require the Court and the parties to spend time discussing the criminal case, including the differing standards of proof, the different parties involved, and the distinctions between the criminal charges filed and civil claims in this case." (*Id*. at 2–3.)

Plaintiff's explanation about why he believes that evidence about the RVR will come into evidence is somewhat confusing, but he seems to suggest that the seriousness of the conduct at issue (possession of an inmate manufactured weapon) influenced Defendant Biter's actions at the ICC hearing. (Doc. 211 at 3.) Defendant, for his part, makes no effort to disclaim the relevance of the underlying RVR. (Doc. 220 at 1–3.) Thus, assuming evidence of the RVR comes before the jury, Plaintiff argues that any such evidence will unfairly suggest Plaintiff's guilt as to the RVR, which will undermine Plaintiff's credibility unless it is countered by evidence of the outcome of the RVR. (*See id*. at 2.)

Defendant responds by offering various arguments why the outcome of the RVR is irrelevant. First, Defendant emphasizes that the RVR charges were not resolved until years after the conduct at issue in this case, thereby suggesting that the outcome evidence (i.e., the result of the RVR prosecution) could not possibly be relevant to Warden Biter's actions. (Doc. 220 at 7.) However, this does not address the primary reason why Plaintiff seeks to offer evidence about the outcome of the RVR:  to avoid the possible prejudice that might result from the jury learning of the nature of the RVR.

The parties offer no analogous authorities on this subject. Defendant cites *Thompson v. Gomez*, 2022 WL 4664481 * 3 (E.D. Cal. Sept. 30, 2022), but that case is factually distinguishable. There, the plaintiff brought excessive force claims against officers related to a particular incident for which the plaintiff was also criminally charged. *Id*. The court excluded evidence of the plaintiff's subsequent acquittal on several grounds, including that the any probative value as to the use of force claim "is substantially outweighed by a danger of ... unfair prejudice ... [and/or] misleading the jury" because the standard of proof in the criminal case was different from that which would apply to the civil claim. *Id*.

Plaintiff has made a colorable argument, unrefuted by the Defense, that the July 13, 2013 RVR is relevant and why he may wish to discuss the ultimate outcome of the RVR to address prejudice that may result from disclosure of the nature of the RVR. The Court shares Plaintiff's concern that if evidence of the RVR is put before the jury without any explanation of the ultimate outcome of the rule violation charge, the jury may be misled into believing that Plaintiff was guilty of those charges, which might influence their view of his credibility. However, the Court is likewise concerned about unduly complicating the proceedings and confusing the jury by creating a "case within a case." The motion is therefore **GRANTED IN PART** and **DENIED IN PART** as follows.

If Biter offers evidence about the underlying events which gave rise to plaintiff's placement in AdSeg, evidence that Plaintiff was not convicted of the charge may also be introduced. However, the Court Plaintiff **SHALL NOT** present evidence or argument about his "factual innocence" to the charge or similar evidence or argument. Despite Plaintiff's argument to the contrary, as the Defense correctly points out, "[a] not guilty verdict is not the equivalent of finding the defendant innocent. A not guilty verdict simply means the prosecution did not prove the defendant's guilt beyond a reasonable doubt." (Doc. 220 at 2 (citing *Paige v. Allison*, No. 20-CV-07378-BLF, 2021 WL 3726568, at *15 (N.D. Cal. Aug. 23, 2021) (citing *Kansas v. Marsh*, 548 U.S. 163, 180, n. 7 (2006)).); *see also Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir. 1988) ("Evidence of an acquittal is not generally admissible in a subsequent civil action between the same parties since it constitutes a negative sort of conclusion lodged in a finding of failure of

1   the prosecution to sustain the burden of proof beyond a reasonable doubt.").[1]

2          The Court will not permit Plaintiff to import into this case details about his separate

3   claims and lawsuit against a Corrections Officer involved in the underlying RVR, who Plaintiff

4   claims "framed" him. Plaintiff has not demonstrated that evidence to be relevant, and even if

5   marginally relevant, Plaintiff has not demonstrated that its probative value outweighs the potential

6   for such evidence to confuse the issues presented to the jury in this case.

7          2.   Defendant's Motion in Limine #2

8          Defendant moves to preclude Plaintiff from offering into evidence uncertified video

9   recordings of the depositions of Defendant Biter and former Defendants Tarnoff, Castro and

10  Lawless. (Doc. 182 at 4–5.) According to Plaintiff, these depositions were taken in person and

11  videorecorded by Plaintiff's counsel in accordance with the notices of the depositions, and the

12  depositions were also reported stenographically. (Doc. 211 at 3.) Plaintiff seeks to use the video

13  versions of the depositions.

14         Defendant asserts that Plaintiff has not provided copies of the videos taken at the

15  depositions and that Plaintiff did not provide them as a part of the exchange of exhibits. The

16  pretrial order was explicit that exhibits must be disclosed in advance and must be listed in the

17  pretrial order. (Doc. 177 at 9) This is particularly important in this instance where there was no

18  certified videographer, and the defense has had no opportunity to ensure that the video taken by

19  plaintiff's counsel does not distort the deponent or counsel's appearance or demeanor or the

20  integrity of the sworn testimony. Moreover, plaintiff makes no effort to demonstrate manifest

21  injustice will result if the videos are not allowed. *Id.* Thus, the motion is **GRANTED**.

22         3.   Defendant's Motion in Limine #3

23         Defendant next moves to preclude Plaintiff from using discovery responses by the

24  dismissed Defendants (Tarnoff, Acebedo, Castro and Lawless) offensively against Defendant

25  Biter (unless Defendant jointly responded to the discovery requests). (Doc. 182 at 6.)

26

27  [1] Plaintiff claims, somewhat cryptically, "[t]he fact that Mr. King was factually innocent of the rules violation charges brought against him, which led to his being placed in administrative segregation and resulted in his being brutally assaulted and injured by a Bloods gang member cellmate, Tebow Locklin, is also relevant to the <u>damages</u>

28  suffered by Mr. King in the aftermath of the assault." (Doc. 211 at 3 (emphasis added).) Without additional information, the Court cannot discern how the RVR or its outcome are relevant to damages.

In response, Plaintiff indicates that he does not intend to use discovery responses of former defendants that Defendant Biter did not jointly respond to against Defendant Biter. (Doc. 211 at 4–5.) However, Plaintiff does intend to use any discovery response to impeach any witness who gives testimony inconsistent with his or her answers to interrogatories, requests for admissions or requests for production of documents. (Doc. 211 at 5.)

In reply, Defendant concedes that answers to interrogatories can be used for impeachment, but maintains that neither any objections proffered to any discovery request, nor the responses to requests for admissions or requests for production are appropriate for use as impeachment since they are not signed by the party. (Doc. 220 at 4.) The Court agrees. Thus, the motion is **DENIED in PART** in that discovery responses signed by the witness may be used for impeached. The motion is **GRANTED in PART** in that discovery responses unsigned by the witness may not be used.

### 4.  Defendant's Motion in Limine #4

Defendant's fourth motion in limine seeks to preclude Plaintiff from providing opinion testimony about (1) diagnosis of any medical or mental health condition resulting from the incident; (2) mental or emotional distress resulting from the incident; and (3) causation of injuries requiring specialized medical knowledge.

Pursuant to Fed. R. Evid. 701, lay witness opinion testimony cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "Rule 701 has been used to bar lay witnesses from testifying as to their opinion on causation where such a determination would require the experience of an expert." *Lillie v. ManTech Int'l Corp*., Case No. 2:17-cv-02538-CAS-SSx, 2018 WL 6323076, at *5 (C.D. Cal. Dec. 3, 2018). Defendant maintains that, as a non-expert witness, Plaintiff is not qualified to offer any expert opinions in this case concerning the <u>cause</u> of any alleged physical injuries, long term effects, or alleged mental or emotional injuries. (Doc. 182 at 6–7.)

Plaintiff concedes that this motion should be granted to the extent Defendant seeks to exclude "medical opinions" as to the causation of Plaintiff's alleged emotional distress and any medical diagnoses. (Doc. 211 at 5.) However, Plaintiff argues that he should be able to testify as

1  to the "causes of the physical and emotional pain" he experienced after being assaulted by Tebow
2  Locklin because "causation of these injuries is not beyond common experience." (*Id.* (citing
3  *Hovsepian v. State Farm Mut. Auto. Ins. Co.*, No. CV-09-08929 MMM (PLAx), 2011 WL
4  13213900, at *10 (C.D. Cal. Jan. 12, 2011) ("Courts frequently hold that lay witnesses cannot
5  testify regarding causation where determining the cause of a particular incident or occurrence is
6  beyond common experience.")).)

7    No lay witness is allowed to usurp the role of the jury by testifying as to an ultimate issue,
8  including as to causation. However, Plaintiff may testify about what he felt and experienced
9  during and after the assault and everything else within his personal perception, such as whether he
10  suffered from these conditions before the assault and as to his emotional distress and medically
11  related experiences under Rule 701. "Just because a lay witness cannot testify about his opinion
12  as to the causation of the emotional distress does not mean that a plaintiff cannot testify about the
13  surrounding facts which prove a causal link between the alleged wrong and the alleged damage,
14  even without an expert." *Boren v. Harrah's Ent. Inc.*, No. 2:08-CV-00215-GMN, 2010 WL
15  4340641, at *2 (D. Nev. Oct. 26, 2010); *Jan. v. Dr Pepper Snapple Grp., Inc.*, 594 F. App'x 907,
16  910–11 (9th Cir. 2014) (An expert witness is "not required to establish that [plaintiff] experienced
17  mental distress and depression for purposes of noneconomic damages. [Plaintiff] was entitled to
18  prove the latter type of damages by testifying about his own perceptions."). Thus, for example, if
19  he perceived the blow and felt the resulting pain, this testimony is permitted. However, he cannot
20  testify as to injuries he suffered, which can only be explained by an expert, e.g., internal injuries.

21    In reply, Defendant somewhat oversimplifies the standard by arguing that Plaintiff has
22  conceded that he is limited to testifying to his own perceptions and cannot offer opinions as to
23  what caused any injury or emotional distress, or whether it was permanent or on-going. *Haflich v.*
24  *McLeod*, No. CV 09-161-M-DWM-JCL, 2011 WL 71435, at *2 (D. Mont. Jan. 10, 2011). As
25  mentioned above, there may be circumstances in which Plaintiff can testify about causation and
26  the caselaw establishes that he can discuss his own perceptions and surrounding facts which may
27  prove a causal link between the alleged constitutional wrong and his alleged damages.

28    Finally, Plaintiff mentions in his opposition that his wife may testify regarding her

perceptions of plaintiff's emotional state. (Doc. 221 at 6.) While this may be technically true[2], *Burke v. City of Santa Monica*, No. CV-09 02259 MMM (PLAx), 2011 WL 13213593, at *20 (C.D. Cal. Jan. 10, 2011), Plaintiff's wife has not been identified as a witness and, accordingly, her testimony will not be allowed. (Doc. 220 at 5.)

For the reasons set forth above, this motion is **GRANTED IN PART**. Plaintiff may not testify as to any medical causation or diagnosis, but he may testify as to the impacts of the assault so long as that is within the realm of common experience. He also may testify about his emotional distress and medically-related experience and may relay circumstantial facts to the jury that would support a finding of causation. Finally, because Plaintiff has not disclosed his wife as a witness, she **may not** testify at the trial. (Doc. 177 at 7-8)

### 5.  Defendant's Motion in Limine #5

Defendant's final motion in limine concerns defense expert Jay Aguas. (Doc. 182.) According to Defendant, Mr. Aguas indicated, among other things, that he would testify as to: (1) whether Defendant Biter was "deliberately indifferent" and/or about legal opinions set forth in the case *Wilks v. Neven* provided to him by Plaintiff's counsel. He also will opine: (2) that Plaintiff should have been placed in a single cell assignment or should have been transferred to another CDCR institution; (3) that King found his intrinsic motivation to change; (4) the gang "disavowal" process; and (5) whether Defendant violated any CDCR policy. (Doc. 182 at 7.)

#### a.  *Objection to the Offering of Legal Opinions*

Defendant seeks to preclude Mr. Aguas from offering legal opinions, including the opinion that Defendant acted with deliberate indifference and/or any related opinion based upon caselaw. The law on this issue is well established. While an expert opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), expert testimony should nonetheless be excluded "if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury." *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) (quoting United States v. Binder, 769 F.2d 595, 602 (9th Cir. 1985))). It follows that "an

---

[2] Even is she were identified as a witness, she would be able to testify only as to what she observed and not as to what Plaintiff told her.

expert cannot testify to a matter of law amounting to a legal conclusion." *United States v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015) (excluding expert testimony that "provided only a recitation of facts and the legal conclusion that Tamman. . . did not break the law" and finding "[t]his is not a proper expert opinion.").

Plaintiff does not meaningfully oppose this aspect of the Defense motion. Though it appears that Mr. Aguas is aware of the some of the limitations of expert testimony. (*See* Doc. 182-1, Deposition of Jay Aguas ("Aguas Depo.") at p. 71 (acknowledging that he is not qualified to offer a legal opinion in this case)), his report and his deposition testimony at times strays into the province of the jury. The motion in limine is **GRANTED** as to this issue. Plaintiff's counsel SHALL ensure that Mr. Aguas understands that he cannot testify as to issues to be decided by the jury, such as whether Defendant Biter was "deliberately indifferent."

b. *General Qualification Objections*

Defendant objects that Mr. Aguas is not qualified to testify regarding ICC hearings; whether Plaintiff should have been placed in a single cell assignment/transferred to another CDCR institution; whether King was paroled because he found his intrinsic motivation to change; the gang "disavowal" process; and any policy violations by the Defendants. (Doc. 182 at 11.) Defendant specifically points out that Mr. Aguas has never worked in any capacity in an adult prison for CDCR, has never testified as an expert in a case involving the classification of an adult male offender within a CDCR institution, and has never provided an expert report relating to disassociating from a gang in an adult male CDCR institution, housing policies within an adult male institution or institutional classification committee (ICC) hearings. (*Id.*) Additionally, Mr. Aguas has never been involved in a "disavowal process" within CDCR's adult institution. (*Id.*) It appears to be undisputed that Mr. Aguas' professional experience is with the California Youth Authority (CYA) from where he retired in 2007. Mr. Aguas also admitted in his deposition that CYA operates differently from adult institutions. (Aguas Depo., pp. 24:1-4, 25:18-26:13, 26:22-27:8, 32:2-35:23.)

Based on the above, Defendant maintains that Aguas is not qualified by any specialized knowledge, training or experience that would allow him to testify as an expert regarding whether

1   plaintiff should have been placed in a single cell assignment, whether Plaintiff should have been

2   transferred to another CDCR institution, and what the gang disavowal process was at Kern Valley

3   State Prison. (Doc. 182 at 11.)

4        First, Mr. Aguas' qualifications appear to be more robust than Defendant is

5   acknowledging. As Plaintiff summarizes in his opposition "Mr. Aguas has years of experience

6   working within an agency that was merged with CDCR, the California Youth Authority,

7   including working as a Superintendent of CYA facilities, and working as the Deputy Director of

8   Juvenile Facilities. He is an Adjunct Instructor of Criminal Justice at Sacramento State University

9   and has taught classes in Gangs and Gang Violence." (Doc. 211 at 6.) In addition, although he

10   indicates his work experience has been "with the juvenile side" he indicates that he has had

11   "numerous other interactions with the adult side during that time." (Aguas Depo. at p. 23.)

12   However, as of now, the Court lacks sufficient information to understand the extent to which this

13   experience translates to the factual circumstances at issue here.

14        Additionally, Defendant argues Aguas has no basis for opining that Plaintiff was paroled

15   because he found his intrinsic motivation to change. *Id*. Although Aguas testified at his deposition

16   that he received training to counsel individuals to help them find their intrinsic motivation to

17   change, he never met with or spoke with Plaintiff King and has no basis for this improper

18   character evidence. (*Id*. at 12 (citing Aguas Depo at pp. 39:2-23, 40:1-6, 72:12-13.) The Court

19   sees no foundation for this opinion set forth in the report or in his deposition. His testimony and

20   opinion in this regard is based only on speculation. Thus, the motion is **GRANTED** as to this

21   opinion.

22        Finally, Defendant objects to Mr. Aguas opining that Defendant violated any policy

23   because he did not identify in his report or at deposition any CDCR policy that Defendant

24   violated. (Lompa Decl., Ex. A, p. 94:6.) It appears that Mr. Aguas to critical of Mr. Biter for

25   failing to consult Mr. King's C-file when evaluating Mr. King's proper classification. HE testified

26   that there is a policy that required that action and that this is described in the DOM. He did not

27   identify a particular section of the DOM which requires this, and he was not asked to do so.

28   Rather, he admitted that his report failed to list the information and, indeed, the report does not

1   indicate that he reviewed the DOM related to inmate classification before finalizing his report.

2               c.   *Material "Copied" from Another Expert's Report*

3           Aguas admitted at his deposition that that eleven paragraphs set forth in his expert report

4   are information he copied verbatim from the report of Philip Stanley, an expert withdrawn by

5   Plaintiff. (Aguas Depo. pp. 46:11-50:6; Doc. 182-1 (Aguas' highlighted expert report).)

6   Defendant asserts that though Federal Rules of Evidence permit an expert to rely upon "facts and

7   data," an expert may not rely upon excerpts from opinions developed by another expert for the

8   purposes of litigation. (Doc. 182 at 12–13.) It is true that the caselaw raises serious concerns

9   where an expert relies on the opinions of another expert, rather than formulating opinions

10  independently. See *In re Imperial Credit Indus., Inc. Securities Litig.*, 252 F. Supp. 2d 1005, 1012

11  (C.D. Cal. 2003) ("The rules do not permit an expert to rely upon excerpts from opinions

12  developed by another expert for the purposes of litigation."); *In re ConAgra Foods, Inc.*, 302

13  F.R.D. 537, 556 (C.D. Cal. 2014) ("An expert's sole or primary reliance on the opinions of other

14  experts raises serious reliability questions."). But simply <u>copying</u> the text from another expert's

15  report is not dispositive of whether Mr. Aguas reached the same opinions independently.

16          Plaintiff contends that the material copied appears to consist of relevant facts, rather than

17  opinions, which lend itself to the "copying for convenience." (Doc. 211 at 6–7) However, review

18  of the report undercuts this claim. The "facts" to which the report refers appear to include

19  commentary in addition. However, it appears from Mr. Aguas' deposition that he agrees with this

20  commentary, even though the Court is uncertain as to the basis for his agreement. Thus, if Mr.

21  Aguas is permitted to testify (see below) this portion of the motion is **DENIED**.

22              d.   *Opinions Based on Conversations with Former CDCR Employees and*

23                    *"Others"*

24          Defendant argues that certain of Mr. Aguas' opinions regarding the operations of gangs

25  are based on unreliable hearsay because Mr. Aguas testified "that several of his opinions were

26  based on conversations with former CDCR employee Brian Perry and 'other guys' he played

27  softball with back in 2004. Aguas admits these conversations had nothing to do specifically with

28  Kern Valley State Prison where King was incarcerated in 2013." (Doc. 182 at 13 (quoting Aguas

1   Depo. at, pp. 78:1-79:12.)) Defendant maintains that Mr. Aguas has no independent experience or

2   training with gangs and their operations in adult prisons in CDCR. (*Id.*, (citing Aguas Depo at pp.

3   36:20-38:10; 43:16-45:1).) Therefore, Defendant argues that, Mr. Aguas' opinions that Black

4   inmates cannot seek mental health services without the approval of the gang's shot caller; gangs

5   drive daily life at CDCR institutions; and that Bloods are one of the smallest groups in CDCR

6   institutions are based on unreliable hearsay. (*Id.*)

7   　　　The Court believes the caselaw and the record is more nuanced than Defendants

8   acknowledge. Mr. Aguas testified that he considered a range of information including

9   conversations he had with staff at adult CDCR institutions. One of those staff members was Brian

10  Perry, a "renowned gang expert with CDCR"; Mr. Aguas also conversed with other people on the

11  "adult side" with whom Mr. Aguas was associated. (Aguas Depo. at p. 77.) This is not an

12  inherently impermissible method for an expert to gather information. *See, e.g.*, *Gonzalez v.*

13  *Montgomery*, No. SACV 15-2150-PA (LAL), 2017 WL 3429375, at *11 (C.D. Cal. Mar. 10,

14  2017), *report and recommendation adopted*, 2017 WL 3427959 (C.D. Cal. Aug. 5, 2017) (finding

15  sufficient foundation where expert, among other things, testified he spoke with "officers in the

16  gang investigations division").

17  　　　On the other hand, there is no explanation as to whether what Mr. Aguas has been told

18  relates to the circumstances confronted in this case.  Mr. Aguas admits that the information

19  provided him by Mr. Perry does not constitute CDCR policy, that Mr. Perry gave him this

20  information before 2003 and that Mr. Perry provided no information about the gang population at

21  the prison at issue here in 2014 (Doc. 182-1 at 81).  Thus, the fact that Mr. Perry and others have

22  told Mr. Aguas information about gangs may mean that they are experts on gangs—though, even

23  this is uncertain—but that does not mean, necessarily, that Mr. Aguas is an expert on gangs or

24  that their, or his, expertise is sufficient. The Court has been provided no information about the

25  expertise of those who have provided Mr. Aguas his information, and there are no specifics

26  provided about the amount of tutelage these others have provided Mr. Aguas. At this point, the

27  Court lacks sufficient information to determine whether Mr. Aguas is qualified to testify in this

28  matter, so this portion of the motion is **RESERVED**. Thus, Mr. Aguas may not be called as an

1    expert until he submits to voir dire outside the presence of the jury. Counsel **SHALL** meet and

2    confer so that this hearing can be scheduled to occur at a time before or after a regular trial day.

3    **B.      Plaintiff's Motions in Limine**

4           1.      Plaintiff's Motion in Limine #1

5           Plaintiff's first motion in limine seeks very generally to preclude testimony, argument,

6    comment or evidence of any of Plaintiff's prior bad acts, prior litigation, tattoos, prison

7    disciplinary history, arrests or law enforcement contacts. Defendant is correct that Plaintiff's

8    opening brief does not identify particular evidence that is the subject of his motion. However, the

9    opposition and reply brief lend additional clarity and specificity to the disputed material.

10                  e.  *Tattoos*

11          It is undisputed that Plaintiff has a tattoo on his chest that indicates his membership in the

12   Athens Park Boys Blood gang. (*See* Doc. 206 at 3 (citing Exh. DX513 (Defense exhibit that

13   describes the tattoo but does not contain a picture of it)).) Defendant asserts that the tattoo is

14   relevant to liability, because it shows Plaintiff's affiliation with the Bloods gang, an issue he has

15   raised in this case. Defendant is correct that evidence of gang affiliation is admissible when

16   relevant to a material issue in the case. *United States v. Abel*, 469 U.S. 45, 49 (1984). The

17   remaining question is whether the probative value of the Bloods gang tattoo is outweighed by

18   "unfair prejudice." "Unfair prejudice is measured by the degree to which a jury responds

19   negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or

20   less probable." *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987) (emphasis added).

21   Put another way, "unfair prejudice" means "undue tendency to suggest decision on an improper

22   basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d

23   1160, 1172 (9th Cir. 2000). At this point, the Court is not clear as to the context for which this

24   evidence would be admitted. The Court has no information as to when Mr. King obtained this

25   tattoo or if it is evidence of ongoing membership in the Bloods. Thus, until the Court receives

26   additional information as to the purpose for admission of this evidence it may not be introduced,

27   and the Court's ruling on this issue is **RESERVED**.

28   ///

1          f.  *Prison Disciplinary Records/ RVRs*

2          Though Plaintiff does not specify in his motion any particular RVRs he seeks to exclude,

3   Defendant nonetheless stipulated in opposition that he will not seek to introduce any RVRs with

4   the exception of a 2011 RVR related to an October 18, 2011 incident (RVR No. FB-11-10-026)

5   and an additional RVR from 2010 that Plaintiff has identified as a trial exhibit (RVR No. FA-10-

6   12-023). Both of these are joint exhibits. Plaintiff indicates in reply that this stipulation is

7   sufficient. (Doc. 233 at 2.) Therefore, with respect to any RVRs, the motion is **DENIED** as to the

8   RVRs noted above and **GRANTED** as to any other RVR.

9          g.  *Other Law Enforcement Contacts*

10         The parties have stipulated that Defendant will not seek to introduce evidence of

11  Plaintiff's specific convictions and that references to conviction offenses will be redacted if

12  contained in any exhibits admitted into evidence or used at trial. (Doc. 215, ¶ 1.) This includes

13  any reference to the "R" suffix in his C-file due to the fact that one of his prior convictions was a

14  sex offense. (Doc. 223 at 2.) However, Defendant will be permitted to reference (1) the fact that

15  Plaintiff was convicted of one felony offense and (2) the length of his incarceration. (Doc. 215,

16  ¶ 1.)

17         Plaintiff also seeks to preclude introduction of Plaintiff's two parole violations: Plaintiff's

18  failure to register pursuant to Penal Code 290; and Plaintiff's failure to participate in sex offender

19  treatment. (*See* Doc. 206 at 4.) Defendant indicates he will only seek to introduce this evidence, if

20  Plaintiff provides inconsistent testimony on direct examination. (*Id*.) With this understanding, the

21  motion is **DENIED** as **MOOT**. The parole violation information may be admitted **only** for

22  impeachment purposes and only if he introduces contradictory testimony in his direct case.

23         2.    Plaintiff's Motion in Limine #2

24         Plaintiff's second motion in limine seeks to exclude evidence of unspecified arrests, law

25  enforcement contacts, other litigation and prison disciplinary history of two inmate witnesses,

26  Chad Elie and William Mathis. (Doc. 184.) Neither the opposition nor reply brief shed additional

27  light on the specific evidence in dispute. As a result, the motion is **DENIED WITHOUT**

28  **PREJUDICE**. The Court cannot evaluate this motion in a vacuum.

1          3.      Plaintiff's Motion in Limine #3

2          Plaintiff originally named several defendants in this case. Only Defendant Biter remains a

3   defendant. Plaintiff's third motion in limine seeks to preclude "[a]ll comment, argument and

4   evidence of third party liability or claims, that some third party was culpable or liable or was

5   previously a defendant and evidence of other claims that have since been dismissed should be

6   barred." (Doc. 185.)

7          The Court agrees with Defendant that it is unclear what evidence Plaintiff is seeking to

8   preclude. (Doc. 206 at 5.) Nonetheless, Defendant assumes in his opposition that Plaintiff is

9   seeking to exclude evidence that former defendants Dina Tarnoff, Johnny Castro, Curtis Lawless

10  and J. Acebedo and others were involved in the events that are alleged in Plaintiff's complaint

11  and/or any evidence the former defendants were voluntarily dismissed by Plaintiff. (*Id*.)

12  Defendant expresses concerned that Plaintiff is seeking to preclude or limit evidence that may be

13  relevant to one of the elements of a § 1983 claim (e.g., whether Defendant's conduct was the

14  actionable cause of Plaintiff's alleged injury).

15         However, Plaintiff doubles down on the general nature of this motion in reply, by

16  criticizing as speculative Defendant's theory that Plaintiff "will attempt to argue that Warden

17  Biter is somehow liable for everything that occurs in the prison because he's the Warden." (Doc.

18  233 at 3.) But Defendant was left to speculate about the purpose and target of this motion because

19  Plaintiff did not articulate it with any specificity. Therefore, the motion is **DENIED WITHOUT**

20  **PREJUDICE** to its renewal, if appropriate, during trial.

21         4.      Plaintiff's Motion in Limine #4

22         Plaintiff's fourth motion in limine seeks a ruling precluding "testimony, argument,

23  comment or evidence of Defendant Biter's good faith or about his feelings about being sued."

24  (Doc. 186.) Plaintiff maintains that any evidence from Defendant Biter indicating that he was

25  acting in good faith is "unfairly prejudicial and should be barred." (*Id*. at 3.) Plaintiff also argues

26  that any evidence relating Defendant Biter's "feelings about being a defendant in this action are

27  inflammatory and prejudicial" and would "waste[] time and [be] misleading." (*Id*.)

28              a.   *Evidence Concerning Good Faith*

15

Defendant argues that the motion should be denied with regard to "testimony, argument, comment or evidence" related to Defendant's "good faith," because it is overly broad and non-specific as testimony about "good faith" or "feelings about being sued." (Doc. 206 at 6.) Defendant is particularly concerned that a ruling granting this motion could bar any testimony Warden Biter offers about his conduct, demeanor, or other facts pertaining to the August 1, 2013 classification hearing or January 12, 2014 assault. Defendant is correct that the inquiry into deliberate indifference involves the defendant's perceptions and evaluation of information relevant to Plaintiff's allegations he was in danger. *See Farmer v. Brennan*, 511 U.S. 825, 838, (1994) ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). To succeed on his failure to protect claim, Plaintiff will have to demonstrate that his housing placement put him at "substantial risk of serious harm," and that a prison official displayed "deliberate indifference" to that risk. See *Farmer*, 511 U.S. at 847. A prison official displays deliberate indifference to inmate-on-inmate violence when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [ ] also draws the inference." *Id*. at 837. As a result, Defendant argues that ruling in limine barring "argument, testimony or evidence" about Defendant Biter's "good faith" could have the effect of unfairly restricting Defendant's testimony pertinent to Plaintiff's claim. (Doc. 206 at 6.)

Plaintiff rejoins by arguing, simply, that character evidence is not permitted under Rule 404 and that "Good faith" is not a defense in this case so any comment related to good faith is irrelevant. (Doc. 223 at 3); *see also Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (good faith is no defense to deliberate indifference). This motion straddles the gap between the deliberate indifference standard and the concept of "good faith," making it difficult to issue an appropriately tailored order in the absence of specific information about the testimony Plaintiff seeks to preclude. Thus, the request is **DENIED WITHOUT PREJUDICE** to its renewal addressing more specific aspects of Defendant's anticipated testimony.

b.  *Testimony regarding Defendant's "Feelings About Being Sued"*

Again, Defendant argues that Plaintiff's attempt to limit testimony or argument about

16

Defendant's "feelings about being sued," is overly broad and undefined and as a result placing such a limitation unduly restricts testimony concerning the Warden's background or the lawsuit in general.  (Doc. 206 at 7.) In addition, Defendant argues that subjectivity is a part of the inquiry concerning punitive damages, to which such testimony may be relevant. (*Id.*)

Plaintiff does not address the overbreadth issue in reply and again simply argues that any evidence regarding Defendant Biter's feelings about being sued is irrelevant and "has no place in the trial in this action," because "[s]ympathy for a party is not admissible." (Doc. 223 at 3) On the other hand, the Court cannot imagine a circumstance in which evidence about Mr. Biter's feelings about being sued would be relevant. Consequently, the motion is **GRANTED**, unless the plaintiff opens the door to thisIf an unimaginable circumstance arises and either party intends to ask a question which implicates Mr. Biter's feelings on the topic, the **SHALL** raise this with the Court outside the presence of the jury.

### 5.    Plaintiff's Motion in Limine #5

Plaintiff's fifth motion in limine seeks to bar testimony from Defense expert Special Agent James Harden that (1) makes improper credibility determinations; and (2) instructs the jury on the facts.

#### a.  *Credibility Determinations*

Agent Harden states as follows in his Rule 26 report:

> 1.    Based on this evidence and my experience as an IGI [Institutional Gang Investigator], King did not have safety concerns with Blood gang members.
>
> 2.    The fact that King did not request protective housing and elected to stay in GP [General Population] indicates to me that King did not have safety concerns.

(Doc. 187 at 3 (citing Defense Expert Witness Disclosure, Exhibit A).)

Plaintiff objects that these statements are "diametrically opposed to allegations made by the plaintiff in this case and they are improper credibility determinations." (*Id.*) Plaintiff maintains that because "[c]redibility is a matter to be decided by the jury," *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), overruled on other grounds by *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997), Agent Harden should be barred from presenting this

1    testimony at trial. (*Id.*)

2          Defendant opposes the motion, arguing that Agent Harden is not offering an opinion

3    regarding a party's credibility or whether they could be believed. Instead, Defendant maintains

4    Agent Harden would be applying his substantial experience and review of the record to "provide

5    expert opinions regarding housing policies and procedures, ways an inmate can express safety

6    concerns, and whether there is evidence from an institutional perspective that King expressed a

7    safety concern about being housed with a Blood member sufficient to have warranted a single

8    cell." (Doc. 206 at 8.) Defendant also argues that Agent Harden can properly that, "based on the

9    totality of the evidence, including the fact King did not request protective housing and elected to

10   stay in a general population yard, King did not have safety concerns." (*Id.*)

11         Defendant correctly recites the general rule that expert witnesses may testify if they are

12   qualified and if their testimony will assist the trier of fact in understanding the evidence or

13   determining a fact in issue. *United States v. Amaral*, 488 F.2d 1148, 1152–53 (9th Cir .1973). But

14   an expert may not opine in a manner that amounts to "impermissible legal conclusions or []

15   credibility determinations reserved for the trier of fact." *Engman v. City of Ontario*, No. EDCV

16   10-284 CAS PLAX, 2011 WL 2463178, at *8 (C.D. Cal. June 20, 2011). The specific opinions

17   highlighted above appear to cross that line. Agent Harden cannot opine that Mr. King didn't have

18   safety concerns. However, he *can* opinion how a reasonably well-trained person in Biter's

19   position would act considering the known information. Thus, the motion is **DENIED** in **PART**

20   and **GRANTED** in **PART**.

21         6.    <u>Plaintiff's Motion in Limine #6 and #11</u>

22         Plaintiff's sixth motion in limine concerns documents attached to Defense expert witness

23   Agent Harden's Rule 26 report. (Doc. 188.) Specifically, attached to that report are: (1 an undated

24   photograph and (2) 39 pages of unredacted CDCR records, including (a) an Inmate Record

25   Summary document (30 pages); and (b) several Initial Housing Review forms, dated March 13,

26   2002, October 8, 2003, February 14, 2005, October 27, 2005, December 27, 2005, circa 2007, and

27   April 1, 2008. Plaintiff seeks an order barring Agent Harden from reading from these documents

28   and/or "surreptitiously eliciting and publishing to the jury inadmissible evidence." (Doc. 188.) In

1  reply, Plaintiff emphasized that this motion "does not seek to preclude Agent Harden from

2  referring to or discussing exhibits." Doc. 223 at 5. Rather, the motion asserts that Agent Harden

3  should be barred from using these exhibits "as reservoirs of information from which he can elicit

4  inadmissible and prejudicial information before the jury."

5      Plaintiff's eleventh motion in limine seeks to preclude on relevance grounds use of the

6  same photograph attached to Agent Harden's report. Accordingly, the Court addresses these

7  motions together.

8          b.  *Photograph*

9      Though it was initially unclear from the moving papers, Plaintiff appears to be addressing

10  in these motions a photograph of King (Ex. DX502), which depicts King and two other inmates

11  displaying the hand-signs and symbols promoting their membership in the Bloods gang. (*See*

12  Doc. 206 at 10–11.) Plaintiff seeks to preclude Agent Harding from discussing the photograph

13  (Doc. 188) and relatedly argues that the photograph is inadmissible because it is irrelevant. (Doc.

14  193.) Specifically, Plaintiff contends that because the photograph was found in November 2017,

15  it is irrelevant to the events in this case, which occurred during the approximate period 2011

16  through January 2014. (*Id.*)

17      According to the Defense, this photograph was extracted from a cellular telephone found

18  during a cell search on November 4, 2017, conducted in Facility "B", Building 2, at California

19  State Prison-Los Angeles County (CSP-LAC). (*Id.*) The photograph's metadata corresponds with

20  the dates Plaintiff King was housed at CSP-LAC Facility B, Building 2. (*Id.*) Therefore,

21  Plaintiff's timeframe-based relevance argument is, at least based upon the proffer of the Defense,

22  incorrect.

23      The Defense also appears to indicate that it has no intention of referencing this photograph

24  in its case in chief; rather Defendant intends to use this to impeach Plaintiff's anticipated

25  testimony that he was not involved in any Blood gang activity in prison from 2013 and later. (*Id.*;

26  *see also id.* at 15.) For example, Plaintiff apparently testified at his deposition that he did not

27  participate or "promote" gang activity in prison after 2011 and did not associate with the Bloods

28  gang in prison. (*Id.* at 15.) Plaintiff offers no cogent argument to the contrary. Motion in limine

19

eleven is therefore **DENIED** as moot as to the use of the photograph on direct examination and is **DENIED** as to the use of the photograph for impeachment purposes.

Regarding motion in limine six, which seeks to preclude the Defense from publishing inadmissible evidence to the jury through Agent Harding, the Court expects the Defense to alert the Court in advance if it intends to have Agent Harding discuss this photograph in any way other than for impeachment purposes.

c. *Inmate Record Summary*

In his opening brief, Plaintiff's challenge to the inmate record summary failed to identify the objectional material within the inmate record summary with any specificity, though he did indicate that he planned to submit objections to the summary in accordance with the Revised Final Pretrial Order. (Doc. 188 at 3.) For the first time in reply, Plaintiff identifies 18 categories of information he contends are irrelevant and inadmissible. (Doc. 233 at 6–7.) Given the timing of these assertions, the Court does not have the benefit of a response from the Defense. Moreover, the Court is of the opinion that the exhibit objection protocol set forth in the Revised Final Pretrial Order is the appropriate mechanism for the parties to attempt to resolve disputes of this nature in the first instance. Motion in limine six is **DENIED WITHOUT PREJUDICE** as to the inmate record summary.

d. *Initial Housing Review Forms*

Plaintiff generally objects that the initial housing review forms are irrelevant because the latest is dated more than 5 years prior to the August 1, 2013, ICC hearing at issue in this case. (Doc. 188 at 3.) Plaintiff also contends generally that they "contain a large amount of inflammatory and prejudicial material and their probative value, which is minimal, is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (*Id.*)

Defendant responds by pointing out that Plaintiff has placed his housing status at issue in this case. (Doc. 206 at 12.) The Defense proffers that Agent Harden will testify as follows:

[T]he Initial Housing Review form is the document used by CDCR

20

1
2
3

to house inmates. Each time an inmate is received by a new institution, a screening officer interviews the inmate regarding their housing criteria, including safety concerns, and prepares the Initial Housing Review form.

4   (*Id*.) Defendant indicates he intends to rely on King's Initial Housing Review forms at each

5   institution up to and including Kern Valley State Prison where the events that are the subject of

6   this lawsuit took place as background information regarding King's housing status. (*Id*.)

7   According to Defendant, the most recent Initial Housing Review form, along with the Inmate

8   Record Summary, indicate King was transferred to Kern Valley State Prison on April 1, 2008,

9   where he remained until 2016. (*Id*. (citing Exhs. DX525-30; DX525-41-42).)

10         Considering the above, the Housing Review forms are relevant to King's Institutional

11  Housing Code within CDCR. The probative value of the Housing Review forms is not

12  outweighed by "unfair prejudice." Defendant intends to rely on King's Housing Reviews, to

13  establish King did not have any housing restrictions, which bears on Plaintiff's failure to protect

14  claim.

15         In reply, Plaintiff simply reiterates his assertion that the documents are irrelevant because

16  of their age. Given the Defense proffer described above, the Court finds that the age of the

17  documents bears on their weight not admissibility; the dates of the document can be addressed by

18  counsel in cross-examination and during argument. Motion in limine six is **DENIED** on this

19  issue.

20         7.   Plaintiff's Motion in Limine #7

21         Plaintiff's seventh motion in limine concerns the testimony of Defense medical expert Dr.

22  Donald Cornforth, M.D. (Doc. 189.) Dr. Cornforth has been retained by Defendant as a medical

23  expert. (Doc. 206 at 13.) Dr. Cornforth was also a participant in Plaintiff's emergency room

24  treatment at Delano Regional Medical Center on January 12, 2014. (*Id*.) Plaintiff did not specially

25  retain a medical expert, but he has included Dr. Cornforth and several other treating medical

26  providers on his witness list. (*Id*.) Plaintiff seeks an order precluding testimony, argument,

27  comment or evidence of facts or opinions that do not appear in Dr. Cornforth's report. (Doc. 189.)

28         Defendant argues that Plaintiff's motion in limine motion is too broad because it seeks to

21

preemptively prevent Dr. Cornforth from potentially rebutting testimony within his area of expertise. (Doc. 206 at 13.) Defendant expresses concern that because Plaintiff has also identified Dr. Cornforth as a witness, he may elicit medical testimony from Dr. Cornforth on subjects such as his treatment of Plaintiff that the Defense will need to rebut. (*Id*.)

Dr. Cornforth may testify as a percipient witness *and* on the topics identified in his expert report. To the extent that Plaintiff opens the door to expert opinions that go beyond this, the defense may ask follow-up questions. Thus, the motion is **GRANTED in PART** and **DENIED in PART**.

### 8.   Defendant's Motion in Limine #8

Plaintiff's eighth motion in limine seeks to preclude testimony, argument, comment or evidence of commendations, awards or accolades received by Defendant Biter. (Doc. 190.) Plaintiff contends such evidence is inadmissible under Rule 403 because it has "virtually no probative value, which is far outweighed by the danger of unfair prejudice," and is also inadmissible character evidence, barred by Rules 404 and 405. (Doc. 190.)

Defendant opposes the motion on the ground that it is "vastly over broad and non-specific, rendering it an improper motion in limine." (Doc. 206 at 13.) Defendant insists that Plaintiff should be required to identifies the specific "awards, commendations or, inter alia, accolades" he seeks to exclude. (*Id*.) The Court does not agree. The scope of this motion targets all commendations that may exist in Defendant Biter's employment history, which is not inherently overbroad.

Defendant also argues that some of these commendations may be relevant background material to explain Warden Biter's career as Warden at Kern Valley State Prison and CDCR. (*Id*.) The Court cannot evaluate this particular assertion without a more detailed understanding of which commendations Defendant Biter seeks to introduce as background material. This is because such evidence generally constitutes impermissible "character evidence." *United States v. Brown*, 503 F. Supp. 2d 239, 242 (D.D.C. 2007) ("Character evidence encompasses evidence of a defendant's prior commendations and awards. Such information is not 'background evidence' because the only purpose for offering such information would be to portray a defendant in a

1 positive light by demonstrating recognition of certain character traits or actions that demonstrate

2 such character traits."); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig*., No.

3 3:19MD2885, 2021 WL 954785, at *1 (N.D. Fla. Mar. 14, 2021) ("Courts typically consider

4 evidence of military or police commendations as impermissible character evidence"); *Abella v.*

5 *Rodriguez*, No. 18-24889-CV, 2021 WL 6932178, at *4 (S.D. Fla. July 19, 2021) (such evidence

6 is also improper bolstering). Thus, the Court **RESERVES** ruling on this motion until more

7 specific information is provided. Neither party should allude to such commendations/awards

8 unless they first raise the topic with the Court outside the presence of the jury.

9         9.   Plaintiff's Motion in Limine #9

10      Plaintiff's ninth motion in limine seeks to preclude testimony, argument, comment, or

11 evidence that Biter and other CDCR employees were not subjected to disciplinary charges

12 stemming out of or were exonerated in relation to the events from which this action arose. (Doc.

13 191.) Plaintiff first argues that any such evidence would be irrelevant under Rules 401 and 402,

14 and that it would fail the balancing test under Rule 403. (*Id*. at 3–4.)

15      In opposition, Defendant implicitly narrows the dispute by indicating that evidence of

16 Defendant's or other CDCR personnel's disciplinary history could be elicited if Plaintiff were to

17 inquire into disciplinary history or status of Defendant or other witnesses. (Doc. 206 at 14.)  In

18 reply, Plaintiff indicates that he will Plaintiff will not inquire into the disciplinary status of

19 Defendant Biter, the sole defendant in this case. (Doc. 233 at 8.) This motion is therefore

20 **DENIED AS MOOT** with the understanding that it may be renewed if circumstances change.

21         10. Plaintiff's Motion in Limine #10

22      Plaintiff's tenth motion in limine seeks to preclude "testimony, argument, comment or

23 evidence pertaining to findings and results of prison disciplinary proceedings brought against

24 Tebow Locklin stemming out of his January 12, 2014, assault on Plaintiff." (Doc. 192.)

25 According to Plaintiff's proffer, Tebow Locklin is the gang member inmate who was Plaintiff's

26 cellmate on January 12, 2014, and who is alleged to have assaulted Plaintiff inside the cell at

27 Kern Valley State Prison while Plaintiff was handcuffed. (*Id*. at 3.) After the assault, Locklin was

28 charged by CDCR with rules violations. (*Id*. at 3.)

1      Defendant has already agreed to stipulate that the Defense will not offer evidence related

2    to the District Attorney's prosecution (or lack thereof) of Locklin, (*see* Doc. 192 at 3) so that

3    material is not addressed herein. The remaining dispute is over whether CDCR's own factual

4    findings and the results of internal disciplinary proceedings may be discussed. Plaintiff contends

5    that the CDCR factual findings and the results of the disciplinary proceedings against Locklin

6    (including any finding that the assault on Plaintiff was not gang related), are irrelevant and

7    inadmissible because the jury in this case will be required to determine the facts from the

8    evidence presented at trial and the CDCR disciplinary hearing findings are not res judicata and do

9    not have preclusive effect. (*Id.*) Even assuming arguendo that evidence of the CDCR findings is

10    relevant, Plaintiff argues that the evidence should be barred under Rule 403 because any

11    probative value that the evidence has is substantially outweighed by the danger of the unfair

12    prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

13    waste of time, or needless presentation of cumulative evidence. (*Id.*)

14       Defendant does not seem to be seeking to elicit testimony about any finding by CDCR

15    that the assault was "gang related."  (See Doc. 206 at 14–15.) Rather, Defendant seeks to ensure

16    that Mr. Locklin will be able to testify about why, from his own perspective, the attack was not

17    gang-related. (*Id.*) The Court agrees that Mr. Locklin's version of the events is not unfairly

18    prejudicial.

19       Defendant also seems to indicate an intent to solicit evidence about the fact that Locklin

20    was charged with a rule violation after the attack. (Doc. 206 at 14–15.) Defendant claims that

21    such information will be "probative of the claims in this case" and notes that Plaintiff has listed as

22    exhibits two documents that refer to the RVR against Locklin and which indicate that Locklin

23    was found guilty of the violation. (*Id.* (citing PX 52 at 53).) Even still, Defendant does not explain

24    why CDCR's disciplinary findings against Locklin are relevant. In reply, Plaintiff maintains his

25    objection to the evidence.[3] (Doc. 223.)

26       The Court agrees that the fact that Locklin was charged with a rule violation and the

27

28

---

[3] The Court presumes that Plaintiff therefore intends to redact any mention of that process from his own exhibits and that he does not intend to introduce the exhibits marked as PX 52 and 53.

outcome of that charge have no bearing on the questions presented here.  Instead, it is for the jury alone to determine the facts of the case. Thus, the motion is **DENIED** to the extent that Locklin can testify about the events leading up the assault, what occurred during the assault and why he engaged in the altercation with Mr. King. The motion is **GRANTED** to the extent that the subsequent RVR charge and the outcome of that process may not be introduced.

# ORDER

For the reasons set forth above, the Court **ORDERS**:

a.   Defendant's motion in limine (Doc. 182) Number 1 is **GRANTED IN PART** and **DENIED IN PART.**

b.   Defendant's motion in limine (Doc. 182) Number 2 is **GRANTED.**

c.   Defendant's motion in limine (Doc. 182) Number 3 is **DENIED IN PART** and **GRANTED IN PART.**

d.   Defendant's motion in limine (Doc. 182) Number 4 is **GRANTED IN PART**.

e.   Defendant's motion in limine (Doc. 182) Number 4 is **GRANTED IN PART, DENIED IN PART,** and **RESERVED** in **PART**.

f.   The order on Plaintiff's motion in limine Number 1 (Doc. 183) is **RESERVED IN PART, GRANTED IN PART, DENIED IN PART, and DENIED** as **MOOT**.

g.   Plaintiff's motion in limine Number 2 (Doc. 184) is **DENIED WITHOUT PREJUDICE.**

h.   Plaintiff's motion in limine Number 3 (Doc. 185) is **DENIED WITHOUT PREJUDICE.**

i.   Plaintiff's motion in limine Number 4 (Doc. 186) is **DENIED IN PART WITHOUT PREJUDICE and GRANTED IN PART**.

j.   Plaintiff's motion in limine Number 5 (Doc. 187) is **DENIED** in **PART** and **GRANTED** in **PART**.

k.   Plaintiff's motion in limine Number 6 (Doc. 188) is **DENIED IN PART AS MOOT, DENIED IN PART, DENIED IN PART WITHOUT PREJUDICE** and **DENIED.**

l.   Plaintiff's motion in limine Number 7 (Doc. 189) is **GRANTED in PART** and **DENIED in PART**.

m.   Ruling on Plaintiff's motion in limine Number 8 (Doc. 190) is **RESERVED**.

n.   Plaintiff's motion in limine Number 9 (Doc. 191) is **DENIED AS MOOT.**

o.   Plaintiff's motion in limine Number 10 (Doc. 192) is **DENIED IN PART** and **GRANTED IN PART.**

p.   Plaintiff's motion in limine Number 11 (Doc. 193) is **DENIED IN PART AS MOOT, DENIED IN PART**.

IT IS SO ORDERED.

Dated:   **February 23, 2023**

UNITED STATES DISTRICT JUDGE

26